1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

8
9
10
11
12
13
14
15
16
17
18
19

| | |
|---|---|
| TARA C. FELDER, | No. CV-06-0356-LRS |
| | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA* |
| Plaintiff, | |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

20    **BEFORE THE COURT** are plaintiff's motion for summary judgment (Ct.

21  Rec. 16) and the defendant's motion for summary judgment (Ct. Rec. 17).

22

23                                **JURISDICTION**

24        Tara C. Felder, plaintiff, applied for Title II Disability Insurance Benefits

25  ("DIB") on October 22, 2002.  The applications were denied initially and on

26  reconsideration.  Plaintiff timely requested a hearing and a hearing was held on

27  June 9, 2004, before Administrative Law Judge (ALJ) Verrell L. Dethloff.

28  Plaintiff, represented by counsel, appeared and testified at this hearing.  On

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-      1**

September 25, 2004, the ALJ issued a decision denying benefits.  The Appeals
Council denied a request for review and plaintiff commenced a civil action in the
Western District of Washington seeking judicial review of the Commissioner's
decision denying benefits.  Pursuant to a stipulation by the parties, in August 2005
the Western District remanded the matter to the Commissioner for further
administrative proceedings.  In October 2005, the Appeals Council remanded the
matter to the ALJ.

A supplemental administrative hearing was held on January 26, 2006,
before ALJ Dethloff.  Plaintiff, represented by counsel, testified at this hearing, as
did Tracey Gordy, M.D., medical expert, and Lonnie Beall, vocational expert.  On
July 14, 2006, the ALJ issued a decision denying benefits.  The Appeals Council
denied a request for review and the ALJ's decision became the final decision of the
Commissioner.  This decision is appealable to district court pursuant to 42 U.S.C.
§ 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's
decision, the plaintiff's and defendant's briefs, and will only be summarized here.
At the time of the supplemental administrative hearing, plaintiff was 46 years old.
She has a college education and past relevant work experience as a teacher and
school administrator.  Plaintiff alleges disability since January 23, 2002, due to a
combination of physical impairments (chronic fatigue syndrome, chronic
obstructive pulmonary disease, fibromyalgia, organic brain deficit) and a mental
impairment (depression).  Plaintiff's date last insured for DIB is December 31,
2007.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT-    2**

1 upheld if the findings of fact are supported by substantial evidence, 42 U.S.C. §

2 405(g)...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983).  Substantial

3 evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112,

4 1119 n.10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan*,

5 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and*

6 *Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  "It means such relevant

7 evidence as a reasonable mind might accept as adequate to support a conclusion."

8 *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971).  "[S]uch

9 inferences and conclusions as the [Commissioner] may reasonably draw from the

10 evidence" will also be upheld.  *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir.

11 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the

12 court considers the record as a whole, not just the evidence supporting the decision

13 of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989),

14 quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980); *Thompson v.*

15 *Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

16      It is the role of the trier of fact, not this court, to resolve conflicts in

17 evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one

18 rational interpretation, the court must uphold the decision of the ALJ.  *Allen v.*

19 *Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

20      A decision supported by substantial evidence will still be set aside if the

21 proper legal standards were not applied in weighing the evidence and making the

22 decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433

23 (9th Cir. 1987).

24

25                                    **ISSUES**

26      Plaintiff argues the ALJ  erred in finding that her chronic fatigue syndrome,

27 fibromyalgia, and depression are not "severe" impairments; that he erred in not

28 offering "clear and convincing reasons" for discounting her credibility; that he

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-      3**

erred in not offering adequate reasons for rejecting the opinion of plaintiff's primary care physician, Joseph Wessels, Jr., N.D., a naturopath; and that he erred in not offering adequate reasons for rejecting the opinion of plaintiff's treating psychologist, Richard W. Groesbeck, Ph.D., and the opinion of plaintiff's examining neurobehavioral toxicologist, Raymond Singer, Ph.D..

**DISCUSSION**

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id.*

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. § 404.1520(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-    4**

gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App.
1.  If the impairment meets or equals one of the listed impairments, the claimant is
conclusively presumed to be disabled.  If the impairment is not one conclusively
presumed to be disabling, the evaluation proceeds to the fourth step which
determines whether the impairment prevents the claimant from performing work
she has performed in the past.  If the claimant is able to perform her previous
work, she is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant cannot
perform this work, the fifth and final step in the process determines whether she is
able to perform other work in the national economy in view of her age, education
and work experience.  20 C.F.R. § 404.1520(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie
case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921
(9th Cir. 1971).  The initial burden is met once a claimant establishes that a
physical or mental impairment prevents her from engaging in her previous
occupation.  The burden then shifts to the Commissioner to show (1) that the
claimant can perform other substantial gainful activity and (2) that a "significant
number of jobs exist in the national economy" which claimant can perform.  *Kail
v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

In his July 2006 decision, the ALJ found that plaintiff had a "severe"
cognitive disorder, not otherwise specified (NOS).  The ALJ found that plaintiff
had no other "severe" physical or mental impairments.  The ALJ found that
plaintiff did not have an impairment or combination of impairments that met or
medically equaled any of the impairments listed in 20 C.F.R. § 404 Subpart P,
App. 1.  The ALJ found that plaintiff had no exertional or social limitations, but
was limited to non-detailed work and should avoid concentrated exposure to
environmental pollutants (fumes, odors, dusts, gases, and poor ventilation).  While

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT-    5**

the ALJ found the plaintiff was unable to perform her past relevant work as a teacher and school administrator, he found that she was not precluded from performing other jobs existing in significant numbers in the national economy.

**"SEVERE" IMPAIRMENTS**

A "severe" impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. § 404.1520(c). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. § 404.1508.

Step two is a *de minimis* inquiry designed to weed out nonmeritorious claims at an early stage in the sequential evaluation process. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), citing *Bowen*, 482 U.S. at 153-54 ("[S]tep two inquiry is a *de minimis* screening device to dispose of groundless claims"). "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two. *Bowen*, 482 U.S. at 158 (concurring opinion). "Basic work activities" are the abilities and aptitudes to do most jobs, including:  1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers and usual work situations; and 6) dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b).

In finding the plaintiff to not have "severe" depression, the ALJ reasoned as follows:

The claimant's depression inventory was minimal . . . and

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-    6**

Julia Wong-Ngan, M.D., noted at the penultimate paragraph that depression and anxiety were not significant . . . . The claimant did not seek treatment for her alleged depression or anxiety until December 2003 . . . and that treatment was based on her subjective complaints.  Prior to that time, she had not sought any treatment for depression . . . and anxiety is mentioned only once by an ARNP, who [is] not an acceptable medical source.

(Tr. at pp. 440-41).

Dr. Wong-Ngan, a Ph.D., not an M.D., conducted a neuropsychological evaluation of the plaintiff in December 2002.  The purpose of this evaluation was to "assess her cognitive difficulties, and level of mental disability."  (Tr. at p. 218). Although Dr. Wong-Ngan indicated that plaintiff did "not appear significantly depressed or anxious at this time," she also indicated that plaintiff "apparently has been depressed in the past" and her diagnoses of the plaintiff on Axis I included "Depressive Disorder NOS."[1]  (Tr. at p. 223).  Dr. Wong-Ngan recounted plaintiff's psychiatric history which included treatment with antidepressants "a few years ago."  (Tr. at p. 219).  Dr. Wong-Ngan specifically noted "[t]here was no evidence of malingering."  (Tr. at p. 223).

Although the ALJ asserts that prior to December 2003 the plaintiff had not sought any treatment for depression, the psychiatric history recounted by Dr. Wong-Ngan indicates otherwise, and the June 30, 2003 chart note from a physician's assistant, relied upon by the ALJ as indicating that plaintiff had previously not sought treatment, actually states that plaintiff was not "**presently**" being treated for depressive disorder.  (Tr. at p. 313) (emphasis added).  The ALJ pointed out that in an August 2001 chart note from an ARNP (Advanced Registered Nurse Practitioner), "anxiety" on the part of the plaintiff was

---

[1]  Mental disorders diagnosed on Axis I are those that cause the patient significant impairment and are the focus of the patient's treatment.  *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-    7**

mentioned, but the ALJ rejected that diagnosis as being from a medical source that was not "acceptable."  20 C.F.R. §404.1513(d)(1).    Interestingly, however, the ALJ was willing to use a statement from a physician's assistant, also not an "acceptable" medical source, that plaintiff had purportedly not previously been treated for a depressive disorder.  (Tr. at p. 313).

Even more importantly, the ALJ's finding that plaintiff does not have "severe" depression is directly contrary to the October 2005 "Order Of Appeals Council" remanding the case to the ALJ.  In that order, the Appeals Council found that plaintiff had both "severe" depression and COPD (Chronic Obstructive Pulmonary Disease).  According to the Appeals Council:

> The [ALJ] found [in his September 2004] decision that the claimant's depression and [COPD] are not severe impairments.  However, the Appeals Council concludes that this finding is not consistent with the medical evidence of record.  The claimant is being treated by Richard W. Groesbeck, Ph.D., every two weeks . . . and medical records confirm that the claimant receives treatment for depression, and an adjustment disorder with depressed mood started in January 2004. [Citation omitted].  The decision does not mention the results from a subsequent Beck Depression Inventory that documented moderate to severe depression . . . . Dr. Harold Mayer and Dr. David L. Deutsch, state agency medical consultants, assessed significant environmental limitations due to the claimant's chronic pulmonary disorder.  The [ALJ's] reasons for rejecting these medical opinions are not supported . . . .

(Tr. at p. 504).

In their December 2002 "Physical Residual Functional Capacity Assessment," Drs. Mayer and Deutsch, based on their evaluation of the record, indicated plaintiff's primary diagnosis was COPD and her secondary diagnosis was "Chronic Fatigue."  (Tr. at p. 242).  They opined that plaintiff had certain exertional limitations consistent with a capacity to perform "medium" work: occasionally lift 50 pounds; frequently lift 25 pounds; stand and/or walk about 6 hours in an 8 hour work day; sit about 6 hours in an 8 hour work day.  (Tr. at p.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-    8**

243 and  20 C.F.R. §404.1567(c)).  They also opined that plaintiff would have "difficulty working in an environment [with] concentrated fumes or mold infestation."  (Tr. at pp. 244-45).

In his first decision from September 2004, the ALJ found that the plaintiff had no "severe" physical impairment.  Acknowledging that Drs. Mayer and Deutsch (aka "the Disability Determination Service") had assessed a capacity for "medium" work, the ALJ nevertheless found "that the diagnosis of COPD is not alone adequate to support the limitation indicated."  (Tr. at p. 24).  The ALJ asserted "[t]here is no objective evidence to support that she has significant limitations from her mild chronic obstructive pulmonary disease based on her pulmonary function tests."  (*Id*.).  "Giving [plaintiff] the benefit of the doubt," however, the ALJ did find that plaintiff "should avoid concentrated exposure to environmental pollutants" as opined by Drs. Mayer and Deutsch.  (Tr. at p. 30).

In his second decision from July 2006, the ALJ, despite the finding of the Appeals Council that plaintiff's COPD was a "severe" physical impairment and that the ALJ had not given adequate reasons for rejecting the opinions of Drs. Mayer and Deutsch, continued to find that it was not a "severe" physical impairment.  Indeed, in his July 2006 decision, the ALJ simply repeated what he had said in his September 2004 decision for rejecting the opinions of Drs. Mayer and Deutsch. (Tr. at p. 441).  Again in his July 2006 decision, "with much benefit of the doubt," the ALJ found that plaintiff should avoid exposure to concentrated levels of environmental pollutants.  (Tr. at pp. 453-54).

The fact that in his September 2004 decision the ALJ had already accepted (with doubt) the environmental limitations opined by Drs. Mayer and Deutsch, indicates that what the Appeals Council intended to convey in its October 2005 remand order was that the ALJ was not entitled to pick and choose what he wanted from the assessment of those doctors.  In other words, the Appeals Council informed the ALJ that based on the assessment of Drs. Mayer and Deutsch, the

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-       9**

1  plaintiff did have a "severe" physical impairment of COPD and that in addition to

2  causing the environmental limitations opined by those doctors, it caused the

3  exertional limitations opined by them.  If that were not the case, the Appeals

4  Council would have had no reason to discuss this in its October 2005 remand

5  order since, as noted, the ALJ had already accepted the environmental limitations

6  in his September 2004 decision.

7          The ALJ's defiance of the remand order from the Appeals Council casts

8  serious doubt on his findings that plaintiff does not suffer from "severe" medically

9  determinable Chronic Fatigue Syndrome (CFS) or fibromyalgia.  This is confirmed

10  by the superficial analysis of the "severity" of those conditions contained in the

11  ALJ's July 2006 decision.  According to the ALJ, "there is no evidence to support

12  the requirements for a diagnosis of chronic fatigue syndrome" (Tr. at p. 442).  The

13  ALJ did not, however, say why there was no evidence, nor make any effort to

14  discuss the evidence in the record discussing CFS as a diagnosis (including the

15  secondary diagnosis of that condition by Drs. Mayer and Deutsch) and how it

16  compared with the findings that the Social Security Administration considers

17  under SSR 99-2p as establishing the existence of CFS as a medically determinable

18  impairment.[2]  No physician, including medical expert, Dr. Gordy, opined that

19  plaintiff did not have CFS.

20          As in his September 2004 decision (Tr. at p. 24), the ALJ asserted in his

21  July 2006 decision that "there is no objective medical evidence of . . .

22  fibromyalgia, with the only tender point test performed by a non-acceptable

23  medical source."  (Tr. at p. 442).  This "non-acceptable medical source" is Joseph

24  _____

25      [2] "Chronic fatigue is defined as '**self-reported** persistent or relapsing fatigue

26  lasting six or more consecutive months." *Reddick v. Chater*, 157 F.3d 715, 726

27  (9th Cir. 1998)(emphasis in original).  "[T]he presence of persistent fatigue is

    necessarily self-reported . . . [and a] final diagnosis is made 'by exclusion,' or

28  ruling out other possible illnesses." *Id.*

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-    10**

Wessels, Jr., N.D., a naturopath. Dr. Wessels indicated that "[t]rigger points for fibromyalgia are positive and [plaintiff's] reflexes are somewhat diminished." (Tr. at p. 209).[3]  While it is true that a naturopath, like a nurse practitioner and a physician's assistant, is not considered an "acceptable medical source," 20 C.F.R. §404.1513(a) and (d)(1), that does not mean the findings and observations of such a medical source is entitled to no weight. *Duncan v. Barnhart*, 368 F.3d 820, 823 (8th Cir. 2004)(ALJs are "not free to disregard the opinions of mental health providers simply because they are not doctors").  These findings and observations may be accorded less weight than the findings and observations of an "acceptable medical source," but in order to reject them outright, the ALJ must offer germane reasons for doing so. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  The mere fact that Dr. Wessels is a naturopath is not a "germane" reason for rejecting the results of his trigger point testing for fibromyalgia.

The ALJ relied on the testimony of the medical expert, Dr. Gordy, asserting that he was "well qualified to render an opinion as to the nature and severity of the [plaintiff's] conditions . . . [since] [h]e is board certified in both neurology and psychiatry and testified with regard to the physical and mental aspects of this case." (Tr. at p. 453).  As plaintiff points out, and the record bears out, Dr. Gordy is only board certified in psychiatry.  (Tr. at p. 522).  Hence, it is not apparent how Dr. Gordy could be considered well qualified or better qualified to render an opinion on the plaintiff's CFS, fibromyalgia or COPD as compared to the medical providers who actually treated or examined the plaintiff.  Dr. Gordy would certainly have been qualified to offer an opinion about the "severity" of plaintiff's

---

[3]  See also Tr. at p. 589, a March 9, 2006 letter from Dr. Wessels in which he states that in addition to having "multiple positive pressure points on repeated examinations," the plaintiff has "an elevated ANA titer, consistent with the diagnosis of fibromyalgia."  The elevated ANA titer results are found at pp. 203 and 302 of the Transcript.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-    11**

depression had not the Appeals Council, as discussed above, already found that the record supported a determination that plaintiff suffered from "severe" depression.

Substantial evidence in the record supports that plaintiff has "severe" depression, CFS, fibromyalgia, and COPD. The ALJ erred in finding to the contrary.

**REMAND FOR FURTHER PROCEEDINGS OR FOR PAYMENT OF BENEFITS**

The fact that plaintiff has "severe" medically determinable impairments, including a cognitive disorder, depression, CFS, fibromyalgia, and COPD, does not, of course, necessarily mean she is "disabled" (i.e., precluded from performing jobs existing in significant numbers in the national economy). The fact, however, the ALJ did not consider plaintiff's depression, CFS, fibromyalgia, and COPD to be "severe" significantly skewed his analysis of the plaintiff's credibility. This is because the ALJ's primary reason for rejecting plaintiff's credibility was that "[s]he has no discernible impairment to explain her subjective symptoms." (Tr. at p. 445). It also skewed his analysis of the opinions of the medical sources who treated and examined the plaintiff, specifically their opinions regarding the plaintiff's physical and mental limitations.

Normally, a remand would be appropriate for the ALJ to redo these analyses considering that certain additional mental and physical impairments have been established as "severe" at step two. The court, however, has discretion to remand a case or simply to award benefits. *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990)(invoking discretion to order payment of benefits because claimant was then 64 years old, had applied for benefits almost four years prior to the decision, and "further delays at this point would be unduly burdensome"). As in *Terry*, "exceptional facts" in the captioned matter warrant immediate payment of benefits

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-    12**

to the plaintiff.  See also *Smolen v. Chater*, 80 F.3d 1272, 1292 (9th Cir. 1996) (noting seven-year delay and additional delay posed by further proceedings), and *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985) (noting administrative proceedings would only prolong already lengthy process and delay benefits).

The record is already thoroughly developed and it doubtful there is any more relevant evidence that could be adduced at this point.  The plaintiff first applied for benefits almost five years ago.  There has already been one judicial remand to the Commissioner.  Based on that judicial remand, the Appeals Council administratively remanded the matter to the same ALJ who initially determined the plaintiff was not disabled.  As discussed above, it appears this ALJ disregarded the findings and directives of the Appeals Council.  Certainly, if there was to be a second judicial remand, this court would direct the Commissioner to assign another ALJ to the matter.  Based on the ALJ's disregard of the order of remand from the Appeals Council, and the fact that further delay at this point would be unduly burdensome to the plaintiff, the court will fully credit the plaintiff's testimony regarding her physical and mental limitations[4], as well as the opinions of her treating and examining medical providers regarding her limitations.  In doing so, the court finds substantial evidence supports a determination that plaintiff has been disabled since January 23, 2002.  Therefore, the court will remand this matter for immediate payment of Title II disability benefits to the plaintiff in accordance with that disability onset date.

//

//

---

[4] There is no evidence in the record suggesting that plaintiff was malingering. Indeed, there is evidence to the contrary.  (Tr. at pp. 213, 223, 354 and 590). Furthermore, nothing the plaintiff testified to in terms of her activities is inherently inconsistent with the limitations claimed by her and opined by her treating and examining medical providers.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-    13**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

Plaintiff's motion for summary judgment (Ct. Rec. 16) is **GRANTED** and defendant's motion for summary judgment (Ct. Rec. 17) is **DENIED**.  Pursuant to sentence four of 42 U.S.C. §405(g), the Commissioner's decision denying benefits is **REVERSED** and this matter is **REMANDED** to the Commissioner for payment of Title II benefits to the plaintiff in accordance with the applicable law.

**IT IS SO ORDERED.**  The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel.

**DATED** this ___7th___ of August, 2007.


s/Lonny R. Suko
_____
LONNY R. SUKO
United States District Judge


**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT-        14**